# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **MORRIS C. LARD** | **CIVIL ACTION NO. 09-1083-P** |
| **VERSUS** | **JUDGE HICKS** |
| **WARDEN GOODWIN, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff Morris C. Lard ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this Court on June 25, 2009. Plaintiff claims his civil rights were violated by prison officials while incarcerated at the David Wade Correctional Center in Homer, Louisiana.[1] He names Warden Jerry Goodwin, Col. Neal, Sgt. Emmerson, Sgt. Joseph, and Dr. Hearn as defendants.

Plaintiff claims he is 52 years old and legally blind. He claims he can only see the bulk forms of humans and objects.

---

[1] The Court does not consider the complaints made by Plaintiff regarding incidents after he was transferred to Forcht Wade Correctional Center in March 2009 to be part of this action as they occurred at a different facility.

Plaintiff claims that on August 25, 2008, Officer Joseph and Officer Hays transported him from David Wade Correctional Center to LSU Medical Center for vascular surgery. He claims Officer Joseph and Officer Hayes knew of his disability and were to give him hands on assistance but were careless and negligent. He claims he was restrained in plasti-cuffs and shackles for the trip. He claims that upon his arrival at LSU Medical Center, it was raining and cloudy. He claims these conditions further restricted his visibility. Plaintiff claims the steps to exit the van were uneven and improperly placed on the ground. He claims that when he attempted to step out of the van as ordered, he slipped and fell on the concrete. He claims that after other inmates got his attention, Officer Joseph attempted to catch him by the back of his jumpsuit. He claims Officer Joseph partially broke his fall, but he still fell hard on his knees and wrists. Plaintiff claims his shoulder blade, neck, throat, spinal cord, hip, groin, wrists, knees, and lungs were injured in the fall.

Plaintiff claims he was dazed after his fall. He claims that after waiting at LSU Medical Center for approximately one hour in the holding cell, one of the officers noticed that his knees were bleeding through his jumpsuit. He claims the officers then brought him to the emergency room for treatment.

Plaintiff claims the emergency room doctor looked at his knees and told the officers that the proper procedure was to return him to David Wade Correctional Center to complete paperwork and then return him to LSU Medical Center for a full examination. He claims the doctor then sprayed his knees with an antibiotic and bandaged them with gauze. Plaintiff claims his scheduled treatment was cancelled and he was returned to David Wade

Correctional Center. Plaintiff claims the ER doctor conspired with Officer Joseph and Officer Hayes to deny him medical attention.

Plaintiff claims Officer Joseph and Officer Hayes told him they would complete the paperwork so he could be returned to LSU Medical Center for treatment for his injuries. Plaintiff claims he received no follow up treatment for his knees, wrists, back, neck and groin area. He claims he should have been given a neck and back brace after his fall. He claims he has experienced worsened pain in these areas since his fall.

Plaintiff also claims that on October 8, 2008, he fell at David Wade Correctional Center as he was getting into the van to be transported to LSU Medical Center. He claims he was in plasti-cuffs and shackles. He claims he received no medical treatment for this or his previous fall. He claims his vascular surgery was again cancelled.

Plaintiff claims that on October 18, 2008, he returned from LSU Medical Center and Nurse Tammie noticed that something was wrong with him. He claims he told her about the incident on August 25, 2008 and his subsequent pain. He claims she informed him that an incident report had not been filed and that she would make a record of the August 25, 2008 incident.

Plaintiff claims that around December 8, 2008, he wrote Warden Goodwin and told him that he verbally requested medical attention because he was legally blind and had difficulty filling out the medical request forms. He claims Warden Goodwin responded that it was not his responsibility or the his staff's responsibility to seek medical assistance for him after the incident. He also claims Warden Goodwin responded that he was turning the

matter over to Col. Neal to investigate. Plaintiff claims the investigation of Col. Neal only consisted of talking to the two officers present at the time of the incident and not him.

Plaintiff claims that in December 2008, he was forced to file a medical request form because the institution would not provide him with any assistance. He claims he then saw Dr. Hearn. He claims Dr. Hearn determined that he had arthritis in 67 percent of his body without knowing any facts or conducting a hands on examination. He admits that Dr. Hearn ordered x-rays at this visit. He admits that over the next 60 days, he saw Dr. Hearn numerous times but complains each visit was only for three or four minutes at a time. Plaintiff admits that he received Tylenol.

Plaintiff claims that approximately two weeks later, he made another sick call and saw a nurse in the infirmary. He claims the nurse told him that his x-rays showed arthritis but no broken bones.

Plaintiff claims that for the next 60 days, he was back and forth to the infirmary because his pain was so severe that he could barely walk. He claims a nurse wrote him prescriptions for Ibuprofen and a muscle relaxer. He claims that after he had taken the medications for three days, Dr. Hearn discontinued them. He claims he was then transported to LSU Medical Center for treatment.

Plaintiff claims the doctors at LSU Medical Center ordered x-rays. He claims the doctors determined that he had pressure on his nerves. He claims the doctors gave him prescriptions for Ibuprofen and a muscle relaxer.

Plaintiff claims he was again sent to LSU Medical Center. He claims the doctors

ordered x-rays. Plaintiff claims these x-rays then disappeared.

Plaintiff claims he made another sick call because he was in severe pain and saw Dr. Hearn. He claims she touched his back and neck while wearing rubber gloves. He claims he jumped and trembled when she touched him because of the tremendous pain he was suffering. He claims Dr. Hearn then left the room and did not return.

Plaintiff claims he was again sent to LSU Medical Center. He claims the doctors ordered x-rays. He claims these x-rays also disappeared.

Plaintiff claims his lungs were damaged in one of his falls. He claims that as a result of his injury, he passes out every six to eight weeks. He claims that in March 2009, he was hospitalized at LSU Medical Center for a respiratory deficiency that is similar to the bends. He claims that after this hospitalization, he was transferred to Forcht Wade Correctional Center.

Accordingly, Plaintiff seeks compensatory and punitive damages, a proper examination, and any other relief to which he is entitled.

For the following reasons, Plaintiff's complaint should be dismissed.

## LAW AND ANALYSIS

**Conditions of Confinement**

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person

acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged unconstitutional conditions of confinement is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991). First, the deprivation alleged must be sufficiently serious. See id., 111 S. Ct. at 2324. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)). Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979. In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court defined as knowing of and disregarding an excessive risk to inmate health or safety. See id., 114 S. Ct. at 1979. However, mere neglect and/or negligence do not constitute deliberate indifference. See Fielder v. Bosshard, 590 F.2d 105, 107 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the Court finds that the facts alleged do not support a finding that the

defendants' conduct was deliberately indifferent on August 25, 2008. See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324. Plaintiff claims that on August 25, 2008, Officer Joseph and Officer Hayes were careless and negligent when they ordered him to exit the van and did not assist him and he slipped and fell on the improperly placed steps. Plaintiff does not allege that Officer Joseph and Officer Hayes acted with deliberate indifference. In fact, Plaintiff admits that they were negligent and careless. Thus, Plaintiff's August 25, 2008 claim has failed to satisfy the second component of an Eighth Amendment claim.

The Court also finds that the facts alleged to not support a finding that the defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities on October 8, 2008. See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324. Plaintiff claims that he fell as he was getting into the transport van while in plasti-cuffs and shackles. The Court finds that having an inmate enter a transport van in plasti-cuffs and shackles does not create a substantial risk of serious harm. Furthermore, Plaintiff does not allege that any Defendant acted with deliberate indifference. Thus, Plaintiff's October 8, 2008 claim has failed to satisfy the first and second component of an Eighth Amendment claim.

Accordingly, Plaintiff's claim regarding the conditions of his confinement should be dismissed with prejudice as frivolous.

**Medical Treatment**

Plaintiff claims he was denied adequate medical care after he slipped and fell exiting the prison transport van and when he was entering the transport van. Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for

persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.

A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). Finally, a prisoner must also allege an injury that is more than de minimis, although it need

not be significant.  See Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999).  See also Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the Court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs.  To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff.  It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.  Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997);  Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  Plaintiff admits that after the officers noticed he was bleeding, they took him to the emergency room for treatment.  He further admits the emergency room doctor looked at his knees, sprayed them with an antibiotic and bandaged them.  Plaintiff admits that he was transported to LSU Medical Center on October 18, 2008.  Plaintiff admits that once he filed a medical request form in December 2008, he was seen by Dr. Hearn.  He admits that Dr. Hearn ordered x-rays and determined that he had arthritis.  He further admits that over the next 60 days, he saw Dr. Hearn numerous times.  He admits that he was seen in the infirmary by nurses. He also admits he was prescribed different medications for his condition.  Thus, Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."  Furthermore, as previously discussed, disagreement with the diagnostic

measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's claims regarding his medical treatment should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may

dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge the at time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 21st day of June 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE